Filed 1/23/14  S.H. v. Super. Ct. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| S.H., <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br>     Respondent; <br><br> SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, <br><br>     Real Party in Interest. | No. H040329 <br> (Santa Clara <br> Super. Ct. No. JD21486) |

Petitioner S.H. (father) is the biological father of now two-year-old T.H.  Father filed this petition for extraordinary writ to challenge the trial court's orders terminating reunification services to T.H.'s mother, S.P. (mother), and setting a permanency planning hearing (Welf. & Inst. Code, § 366.26)[1] for February 27, 2014.  For the reasons stated here, we will grant the petition and stay the section 366.26 hearing until the trial court decides to grant or deny petitioner's request for reunification services.

---

[1]  Unspecified statutory references are to the Welfare and Institutions Code.

# I.    JUVENILE COURT PROCEEDINGS

Mother gave birth to T.H. in October 2011.  At that time, and continuing until June 2013, father was incarcerated "for drug related crimes perpetrated while in the company of [mother]."  In September 2012, T.H.'s maternal grandmother petitioned the probate court for guardianship of T.H.  The probate court, in turn, petitioned the Santa Clara County Department of Family and Children's Services (Department) to investigate the matter.  The Department filed a juvenile dependency petition pursuant to section 300, subdivision (b), obtained a protective custody warrant, and temporarily detained T.H.  The petition listed father as T.H.'s alleged father.  After an initial hearing, the court authorized the Department to place T.H. temporarily with her maternal grandmother for the duration of the dependency proceedings.

The trial court set a jurisdiction and disposition hearing for November 28, 2012, and sent an order for father's appearance to father's penal fire camp.  Father waived his right to attend that hearing.  As discussed in the jurisdiction and disposition report prepared by the Department for the hearing, mother reported she had been "together" with father since 2007 and that they were living together when T.H. was conceived.  In addition to T.H., mother has three other children.  Maternal grandmother is the guardian of these other children.  Both mother and father have extensive criminal records and are registered narcotics offenders.  The Department recommended finding T.H. a dependent of the court and providing family reunification services to mother.  Regarding father, the Department recommended no provision of services because "paternity has not been established."

At the November 28, 2012 hearing, the trial court found true the allegations of an amended juvenile dependency petition, adjudged T.H. a dependent of the court, admitted the social worker's report into evidence, continued T.H.'s placement with maternal grandmother, ordered that mother receive services from the family reunification program,

ordered that no services be provided to father because paternity had not been established, and set a six-month review hearing (§ 366) for May 2013.

In May 2013, father requested and received appointed counsel and the court continued the six-month review hearing to allow father's counsel to communicate with father. Father was released from incarceration in June 2013 and made his first personal appearance before the juvenile court in July 2013, where he also requested paternity testing. The court granted father's request for genetic testing and continued the six-month review hearing pending the results of the testing. In September 2013, the court received genetic testing results from the Department and found father to be T.H.'s biological father.

In preparation for the six-month review hearing, the Department prepared a series of addenda reports. The earliest addendum in the record, prepared in May 2013, discussed mother's "great motivation" to comply with her case plan and recommended that the court provide her an additional six months to continue engaging in reunification services. In later addenda reports, however, the Department changed its recommendation to terminate reunification services for mother, citing mother's failure to comply with her case plan as well as multiple positive drug tests for amphetamines.

The only Department addendum report with any significant discussion of father was prepared in September 2013 after the genetic testing confirmed he is T.H.'s biological father. In the report, the social worker noted that father had visited T.H. between two and four times since his release from the fire camp but that maternal grandmother reported father did not provide items such as food, clothing, or diapers when he visited. The report also stated father told the social worker that while he would like to have custody of T.H. at some point, he was not currently in a position to care for T.H. Based on this information, the social worker who drafted the report opined that "recommending reunification services for the father is not in [T.H.'s] best interest at this time."

Due to the foregoing continuances, the "six-month" review hearing actually occurred on October 28, 2013, 11 months after the juvenile court's jurisdictional and dispositional findings. At the beginning of the hearing, counsel for the Department summarized the issues to be determined by the court: "The issue regarding the Mother is the Department is asking for termination of services. The issue in regards to the biological Father is that the Department is not recommending Reunification services. I believe the Father would like services." The court heard testimony from T.H.'s social worker and father regarding father's request for family reunification services. The social worker, Joseph Phan, testified as an expert witness in risk assessment and the provision of services to families and children. Phan recommended that the court deny reunification services to father because it would "delay the permanency process for [T.H.]" Father expressed his desire to obtain custody of T.H. and his willingness to engage fully in any services that were ordered. After that testimony, the court heard argument from the parties regarding father's request for services. The court took the matter under submission and instructed the parties to return October 30.

On October 30, the court terminated reunification services to mother and scheduled a section 366.26 permanency planning hearing for February 27, 2014. In terminating family reunification services, the court stated: "the parents have failed to participate regularly and make substantial progress in the court-ordered treatment plan, and there is not a substantial probability that the child may be returned to his or her parents within six months." When counsel for the Department asked the court about father's request to receive reunification services, the court responded: "With respect to the Father's request, the Court does find that there was no [section] 388 [petition] filed. I am not entertaining that request at this time." This petition followed.

## II.    DISCUSSION

Father claims the court erred by not considering and deciding whether to grant or deny his request for reunification services. Though he does not set forth a standard of

review, we discern father argues that by refusing to either grant or deny his request for services, the juvenile court failed to exercise its discretion. "A trial court's failure to exercise discretion is itself an abuse of discretion, and we review such action in accordance with that standard of review." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515.)

The provision of reunification services is governed by section 361.5, subdivision (a). Family reunification services are generally provided by right to a child's mother and "statutorily presumed father." (§ 361.5, subd. (a).) For a biological father who, like father here, has not attained the status of a "statutorily presumed father," reunification services are not automatically provided. Instead, section 361.5, subdivision (a) provides the juvenile court with discretion to provide reunification services "if the court determines that the services will benefit the child." (*Ibid.*)

Father does not disclose when he first requested reunification services. Until his paternity was established in September 2013, the Department recommended that father not receive services because "paternity has not been established." Once his paternity was established, however, the Department discussed the possibility of reunification services for father in a September 2013 addendum report, suggesting that father requested services once his paternity was confirmed.

At the October 28, 2013 contested six-month review hearing, counsel for the Department stated at the outset: "The issue in regards to the biological Father is that the Department is not recommending Reunification services. I believe the Father would like services." The transcript of that hearing reveals that whether father should receive reunification services (including discussion of father's fitness as a parent) was the central issue explored during the testimony of father and social worker Phan. The parties' arguments also centered on father's request for services. After allowing testimony and argument on October 28 and 30, the juvenile court determined it would not entertain

father's request for reunification services, citing his failure to file a section 388 petition for modification. In doing so, we find that the juvenile court abused its discretion.

As relevant to father's petition, section 388, subdivision (a)(1), provides: "Any parent or other person having an interest in a child . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." A section 388 petition is the general method of requesting modification of any juvenile court order. It is also a proper method for a biological father to request reunification services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454 (*Zacharia D.*).) However, when, as here, a biological father requests reunification services before a section 366.26 hearing is set, the Department provides a written recommendation regarding the request, and the juvenile court holds a hearing where the central issue is father's entitlement to reunification services, a juvenile court abuses its discretion when it fails to render a decision on the request.

We find support for our decision in *Zacharia D.*, where the Supreme Court considered a biological father's request for reunification services despite his failure to file a formal section 388 petition. In *Zacharia D.*, Javan, who was the biological father of Zacharia, filed a "complaint to establish a parental relationship" after the juvenile court held an 18-month review hearing regarding the mother's compliance with court-ordered reunification services. (*Zacharia D., supra,* 6 Cal.4th 435, 441-442.) The court identified a section 388 petition as the proper method for Javan to request a hearing to reconsider the juvenile court's previous orders. Although the court recognized that "Javan never filed a motion under section 388," it nonetheless considered his request because "[Javan] did seek custody and visitation in his petition to be declared Zacharia's father . . . [and] his counsel impliedly requested reunification services . . . by requesting a continuance so that the County could ascertain what reunification services Javan would require." (*Id.* at pp. 454-455.)

While a section 388 petition remains the proper vehicle for seeking modification of prior orders, in this case the October 28, 2013 hearing was essentially a hearing of the type that would have been held had father filed a section 388 petition. By allowing that hearing to occur but not taking the final step of deciding whether to grant or deny father's request for reunification services, the court failed to exercise its discretion.

The Department relies on the following finding from the court to argue that, rather than defer a decision on father's request, the juvenile court actually considered and denied it: "By clear and convincing evidence, the parents have failed to participate regularly and make substantial progress in the court-ordered treatment plan, and there is not a substantial probability that the child may be returned to his or her parents within six months." However, mother was the only parent who received a court-ordered treatment plan. Indeed, the point of father's request for reunification services was to receive a court-ordered treatment plan. For this reason, the Department's argument is without merit.

Although we find that the juvenile court abused its discretion in not rendering a decision regarding father's request for services, we express no opinion on the merits of father's request. That determination is the province of the juvenile court, and we will not substitute our judgment based on a cold record for that of the court before whom the parties are appearing.

### III. DISPOSITION

Father's petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing respondent court to vacate its October 30, 2013 order declining to entertain father's request for reunification services and to issue a new order in which it determines whether to grant or deny father's request. The section 366.26 hearing currently scheduled for February 27, 2014 is stayed until the juvenile court determines whether to grant or deny father's request for reunification services. In the interests of

justice, this opinion shall be final as to this court seven days from the date of filing.  (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P.J.

_____

Mihara, J.